UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KENNETH MARSH, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:21-cv-912-MTS |
| ) | |
| COMMERCIAL RELATIONSHIP, ) | |
| RECOVERY INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

Before the Court is Defendant Ascentium Capital, LLC's Motion to Dismiss, Doc. [15], Plaintiffs' Amended Complaint, Doc. [9], pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court grants Defendant's Motion.

**I.  BACKGROUND**[1]

This case concerns events surrounding the repossession of Plaintiffs Kenneth Marsh ("Marsh"),[2] Nitro Transport, LLC, and Nitro Auto Sales, LLC (collectively "Plaintiffs") collateral. Plaintiffs and Ascentium Capital, LLC ("Defendant") entered into a finance agreement for a loan to purchase a 2020 Dodge Ram 4500 (the "collateral"). After a dispute, Plaintiffs admittedly defaulted on the loan. Defendant hired Commercial Relationship Recovery, Inc. ("Commercial") to repossess the collateral. Commercial subsequently hired Talladega Towing & Transporting, LLC and Michael D. Thompson ("Thompson") to repossess the collateral.[3] Plaintiffs' "biggest

---

[1] The Court draws these facts from Plaintiffs' allegations in the Amended Complaint, Doc. [9]. In so doing, the Court must liberally construe the complaint in favor of Plaintiffs and must grant all reasonable inferences in their favor. *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010); *Pederson v. Frost*, 951 F.3d 977, 979 (8th Cir. 2020).

[2] Marsh owns Nitro Transport, LLC and Nitro Auto Sales, LLC.

[3] Thompson was an owner and employee of Talladega Towing & Transporting, LLC.

client" is Gateway Classic Cars ("Gateway").  Thompson allegedly called Gateway and told employees that the collateral was under "repo status."  Doc. [9] ¶ 29.  Plaintiffs allege that "[a]s a result of this incident, Gateway terminated Plaintiff from all further business dealings." *Id.* ¶ 36.  Plaintiff Marsh called Thompson "to confront him." *Id.* ¶ 32.  Thompson allegedly told Plaintiff Marsh that if he did not "surrender the collateral immediately," then Thompson would go to visit "the pharmacy." *Id.* ¶ 33.  Plaintiff Marsh's wife worked at a pharmacy and he believed Thompson conveyed a "thinly veiled threat" that Thompson was going to harass or harm his wife. *Id.* ¶ 34.  During the same call, Thompson allegedly also said "that's only the f***ing beginning. . . .I am going to involve your whole f***ing family and everyone you know, and everyone is going to hate you. You have two hours to turnover this f***ing car or else." *Id.* ¶ 35.  Thompson and no other party repossessed the collateral or made any attempt to repossess.

Based on those events, Plaintiffs seek damages against Defendant for (1) common law tortious interference with a contract or business expectancy ("Count I") and (2) a breach of peace under Mo. Rev. Stat § 400.9-609 ("Count II"), stemming from Thompson's alleged conduct.  In the instant Motion, Defendant seeks to dismiss the entire action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Doc. [15].

**II.    LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  The purpose of such a motion is to test the legal sufficiency of a complaint.  When considering a Rule 12(b)(6) motion, the Court assumes all of a complaint's factual allegations to be true and makes all reasonable inferences in favor of the nonmoving party.  *See Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989); *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014).  A complaint must contain "a short and plain statement of the claim

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  To survive a motion to dismiss, the complaint must allege facts supporting each element of the plaintiff's claims, and the claims cannot rest on mere speculation.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Specifically, the complaint "must allege more than '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements'" and instead must "allege sufficient facts that, taken as true, 'state a claim to relief that is plausible on its face.'" *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1057 (8th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The Court "need not accept as true plaintiff's conclusory allegations or legal conclusions drawn from the facts." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).  The Court does not decide whether the plaintiff will ultimately prevail, but rather whether the plaintiff is entitled to present evidence in support of the claim.  *See Twombly*, 550 U.S. at 556.

### III.   DISCUSSION

**1. Count I: Tortious Interreference**

The question here is whether a creditor can be liable for the alleged tortious interference of a twice-removed repossessor under the legal theory of agency.  Under Missouri law, a plaintiff claiming tortious interference with a contract or business expectancy must demonstrate: (1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) absence of justification; and (5) damages resulting from defendant's conduct. *W. Blue Print Co. v. Roberts*, 367 S.W.3d 7, 19 (Mo. banc 2012).  Here, Plaintiffs pleaded that *only* Thompson engaged in the alleged tortious conduct.  Plaintiffs, however, argue that Defendant is liable for Thompson's conduct based on a theory of implied agency. Doc. [19] at 2.

Despite the absence of an express agreement,[4] a principal-agent relationship may be created, which is known as implied agency. *Stram v. Miller*, 663 S.W.2d 269, 274 (Mo. Ct. App. 1983) ("An implied agency occurs when agent and principal have no express understanding as to the agent's appointment, but the conduct of the parties suggests the fact of an agency arrangement."); *Centennial State Bank v. S.E.K. Construction Co., Inc.*, 518 S.W.2d 143, 148 (Mo. Ct. App. 1974).[5]  In order to establish a principal-agent relationship, the principal must have a "right to control" the agent, and the agent must consent to act on behalf of the principal subject to the principal's control. *Blunkall v. Heavy & Specialized Haulers, Inc.*, 398 S.W.3d 534, 541 (Mo. Ct. App. 2013); *see also State ex rel. Ford Motor Co. v. Bacon,* 63 S.W.3d 641, 642 (Mo. banc 2002) ("Agency is the fiduciary relationship resulting from the manifestation of consent by an agent to a principal that the agent will act on the principal's behalf and subject to his control."). An implied agency must be based on facts that imply an intention to create the agency and the implication must arise from "a natural and reasonable, and not from a forced, strained, or distorted, construction of them." *Centennial*, 518 S.W.2d at 148.

Here, the Court does not find a principal-agent relationship existed between Defendant and Thompson.[6]  Plaintiffs do not allege Thompson—the supposed agent—ever manifested consent to Defendant—the supposed principal—that Thompson would act on Defendant's behalf and subject

---

[4] The parties do not dispute the lack of express authority by Defendant to Thompson. Doc. [19] at 2.

[5] There is no difference in principle between an express and an implied contract of agency; the terms merely mark the difference in the character of evidence by which the agency relationship is shown.

[6] Plaintiff does not allege Thompson was ever an employee of Defendant, and the facts do not support such an inference, thus, *respondeat superior* is inapplicable here because no employee/employer relationship existed. *Cluck v. Union Pac. R.R. Co.*, 367 S.W.3d 25, 29 (Mo. banc 2012 ("Likewise, where an employer-employee relationship exists, the doctrine of *respondeat superior* holds that the employer is vicariously liable for the injury-causing conduct *of an employee* done within the course and scope of the employment."); *see also*, *Blunkall v. Heavy & Specialized Haulers, Inc.*, 398 S.W.3d 534, 542 (Mo. Ct. App. 2013) ("liability of an independent contractor cannot flow from a theory of respondeat superior.").

to Defendant's control.[7]  Notably, Commercial—not Defendant—hired Thompson.  Thus, Defendant lacked even "the right to control the ends of [Thompson's] activities." *Bach v. Winfield-Foley Fire Prot. Dist.*, 257 S.W.3d 605, 608 (Mo. banc 2008) ("It is a relationship where the principal only has the right to control the ends of the agent's activities; the principal does not have the right to control or direct the physical movements of her agent in accomplishing the final result . . . .").  Plaintiffs also fail to allege Defendant knew of or consented to the hiring of Thompson to repossess the collateral.  Thus, the Court cannot reasonably infer from the pleadings an implied intention by Thompson or Defendant to create a principal-agent relationship.  *Wallo v. Rosenberg*, 331 S.W.2d 8, 13 (Mo. Ct. App. 1960) (explaining an implied agency may be held to exist if "from the facts and circumstances of the particular case, it appears that there was at least an implied intention to create it").  In general, Plaintiffs cite no cases where multiple degrees of separation between the creditor and repossessor is sufficient to create an implied principal-agent relationship between the two.[8]  Although sympathetic to Plaintiffs' situation,[9] the Court cannot stretch agency principals to remedy wrongs of non-liable parties or extrapolate Plaintiffs' frustration to infer bad faith on Defendant's part.[10]

---

[7] Plaintiff pleads that Thompson acted on behalf of Defendant.  Doc. [9] ¶ 27 ("[a]cts by Mr. Thompson were done on behalf of [Defendant], at the behest of [Defendant], and with the scope of employment by [Defendant]."). However, the pleadings do not support Plaintiffs' assertion, and the Court is not required to accept Plaintiffs' "conclusory allegation" as true. *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (explaining that the Court "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

[8] Plaintiff also seems to conflate implied *agency* with implied *authority*, but both are distinct from one another. Regardless, implied authority is inapplicable here because Plaintiff concedes, and the pleadings show, that Defendant never gave Thompson express authority. *See Mark Century Corp. v. Tiger Broadcasting Co.*, 509 S.W.2d 737, 738 (Mo. Ct. App. 1974) ("Implied authority is grounded on actual authority and consists of those incidental powers which are reasonably necessary and proper to effectuate the expressly conferred authority, and which are not known to be prohibited.); *see also Nichols v. Prudential Ins. Co. of Am.*, 851 S.W.2d 657, 663 (Mo. Ct. App. 1993) ("It follows that without such express authority they could not have implied authority to carry out any of the above functions.").

[9] The Court notes Plaintiffs' frustration in its inability to serve Thompson and Commercial. Doc. [19] at 4.

[10] In its reply Brief, Defendant addresses Plaintiffs' alleged frustration regarding serving Thompson and Commercial. Doc. [20] at 7 n.6.

5

Therefore, Plaintiffs fail to state a claim for tortious interference (Count I).

### 2. Count II: Breach of the Peace

Defendant's liability based on Thompson's conduct reaches a different conclusion in relation to Plaintiffs' breach of the peace claim. Missouri law imposes a nondelegable duty on a secured creditor to repossess collateral in a peaceable manner. *Robinson v. Citicorp Nat. Servs., Inc.*, 921 S.W.2d 52, 54–55 (Mo. Ct. App. 1996) ("[a] secured party may not delegate to third persons, including independent contractors, the secured party's duty to repossess in a peaceable manner."); *Merrell v. Consumer Portfolio Services, Inc.*, No. 05-0735-cv-WODS, 2007 WL 530784, at *3–4 (W.D. Mo. Feb. 14, 2007) (applying Missouri law and holding that a secured creditor has a non-delegable duty to avoid breaching the peace).[11] In other words, Defendant's obligation to repossess peaceably cannot be avoided by claiming that the fault lay with people retained to repossess the collateral, such as Commercial and Thompson. *Id.* ("even though the secured party hired an independent contractor to repossess the collateral, the secured party could be held liable for the breach of the peace caused by the independent contractor."). Thus, Defendant could be liable for Thompson's alleged breach of peace.

Defendant, however, argues that Thompson's conduct does not constitute a breach of the peace. After default, a secured party "may take possession of the collateral . . . without judicial process, if it proceeds without a breach of peace." Mo. Rev. Stat. § 400.9–609(b)(2). Even taking Plaintiffs' allegations as true and viewing them in a light most favorable to Plaintiffs, the facts pleaded show Thompson's comments over the phone—no matter how troubling—fail to amount to a breach of peace as required by the law.

---

[11] However, *Merrell v. Consumer Portfolio Services, Inc.*, makes clear that the non-delegable duty to avoid breaching the peace does not extend to common-law torts committed by the repossesser, such as tortious interference. No. 05-0735-cv-WODS, 2007 WL 530784, at *4 (W.D. Mo. Feb. 14, 2007) (holding the secured party liable for the repossessor's breach of the peace but not liable for other torts committed at the time of the repossession).

Here, no repossession took place, and the alleged "breach of peace" did not occur during an attempt to repossess; in fact, Thompson never even came into contact with Plaintiffs or the vehicle at issue.[12] Plaintiffs have cited no authority (and the Court has found none) that hold a creditor liable for a breach of peace when a repossessor never repossessed or attempted to repossess after previously indicating, or allegedly threatening, that it would do so. *See Gay v. Alliant Credit Union*, No. 4:16-cv-01469-AGF, 2017 WL 35704, at *4 (E.D. Mo. Jan. 4, 2017) (finding no breach of peace, in part, because no repossession took place); *see Jordan v. Citizens & S. Nat. Bank of S.C.*, 298 S.E.2d 213, 214 (S.C. 1982) (holding that a breach of the peace refers to conduct at or near and/or incident to the seizure of the property). Plaintiff also fails to provide a single decision, and the Court finds none, in which a Missouri court found a breach of the peace when the alleged misconduct took place exclusively during a single telephone call, much less during a call *initiated by the debtor* for the purpose of confronting the repossessor, as is alleged here.[13] While the allegations are troubling, nothing in § 400.9–609(b)(2) governs the conduct of a repossessor in general, no matter how repugnant; rather, it simply prohibits a breach of peace *if* a creditor chooses to repossess without judicial process. But here, the Court is faced with a situation where no repossession was attempted or occurred.

Therefore, Plaintiffs fail to state a claim for breach of the peace (Count II).

---

[12] Thompson never repossessed the collateral or even attempted to physically repossess the collateral.

[13] The Missouri statute does not define breach of peace; however, Missouri law generally requires a breach of peace to result in a likelihood of violence or confrontation. *See, e.g.*, *Sperry v. ITT Commercial Fin. Corp.*, 799 S.W.2d 871, 879–880 (Mo. Ct. App. 1990) (holding that "Missouri . . . courts have expressly held that no breach of peace occurs where the circumstances of the repossession were such that 'in all likelihood' no confrontation would materialize"). As explained in the Opinion, Plaintiff has not provided cases where similar factual allegations are sufficient to withstand a breach of peace. In fact, in their Response Brief, Doc. [19], Plaintiffs do not address their breach of peace claim *at all*, despite Defendant arguing in its Motion, Doc. [15], that the claim fails.

7

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss *with prejudice* is granted. Accordingly,

**IT IS HEREBY ORDERED** that Defendant Ascentium Capital, LLC's Motion to Dismiss for Failure to State a Claim, Doc. [15], is **GRANTED**.

Dated this 9th of December, 2021.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE